IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:91cr138 (DJN)

JAMES F. WEBSTER,
Defendant.

**MEMORANDUM OPINION**
**(Denying Motion for Sentence Reduction)**

Defendant comes before the Court seeking a compassionate release under the First Step Act, despite having brutally murdered two women during two separate incidents. Defendant first murdered Geralene Taylor, his then-girlfriend, by strangling her to death on August 30, 1974. Defendant pled guilty to second-degree murder and, on January 17, 1975, received a sentence of sixteen years in a state penitentiary. He served less than four years of that sentence, when the State released him on May 12, 1978. Thirteen years after his release, on August 30, 1991, Defendant killed another estranged paramour, Juanita Stewart. Defendant unlawfully took a firearm into a Walmart in Colonial Heights, Virginia, where Ms. Stewart worked. Defendant forced Ms. Stewart to her knees, placed the gun to her head while she begged for her life and executed her. As a result of this heinous crime, Defendant received a life sentence in state court for first-degree murder and a consecutive ten-year sentence in federal court for the unlawful possession of the firearm.

In his Motion to Reduce Sentence Pursuant to the First Step Act (ECF No. 25), Defendant seeks a compassionate release due to his terminal cancer, asking for the same mercy that he did not give the women who he brutally murdered. Rather astonishingly, the Government

offers no objection to Defendant's motion, but provides no basis for their position despite outlining Defendant's horrendous criminal history.[1] Despite the Government's inexplicable acquiescence, the Court will have no role in releasing Defendant and putting him in a position to kill again, as he did when he was last released. Consequently, the Court hereby DENIES Defendant's request.

## I. THE COMPASSIONATE RELEASE STATUTE

"Generally, a court may not modify a term of imprisonment once it has been imposed except" in narrow circumstances. *United States v. Wirsing*, 943 F.3d 175, 179, 183 (4th Cir. 2019) (citing 18 U.S.C. § 3582(c)). Congress may enact statutory exceptions to this general rule, and Defendant brings his motion under an exception provided by the compassionate release provision of the First Step Act ("FSA"). In 2018, Congress passed the FSA. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Relevant here, the FSA amended the procedures by which defendants can seek reductions in their sentences through compassionate release. Previously, a defendant could only petition the Bureau of Prisons ("BOP") Director for compassionate release, who could then move the district court for compassionate release. *See* U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n. 4 (U.S. Sentencing Comm'n 2018) ("U.S.S.G."). Now, the FSA allows defendants, for the first time, to petition district courts directly for compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i).

---

[1] Even more surprising, the Government makes no mention of the position of the victim's family on Defendant's release or whether the Government even made an effort to contact her family as mandated under the Crime Victim's Rights Act, 18 U.S.C. § 3771(a)(4) ("A crime victim has the following right[] . . . to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceedings."). *See also* § 3771(c) ("Officers and employees of the Department of Justice . . . engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a).").

2

The statute provides that a court "may reduce the term of imprisonment" of a defendant under certain circumstances. § 3582(c)(1)(A). First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. *Id.* Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *Id.* Third, and importantly, the district court must also consider "the factors set forth in section 3553(a) to the extent that they are applicable." *Id.*

## II. FACTUAL BACKGROUND

### A. The Criminal Convictions at Issue.

Defendant's incarceration stems from an incident wherein he killed his paramour at a Walmart in Colonial Heights, Virginia. On August 28, 1991, Defendant took a firearm from behind the counter of a bar in downtown Petersburg, Virginia. (Presentence Report ("PSR") ¶ 10.) On August 30, 1991, Defendant went to the Walmart where Ms. Stewart worked. (PSR ¶ 10.) Ms. Stewart had tried to end her extramarital relationship with Defendant, but she was afraid of him. (PSR ¶ 9.) After the two argued, Defendant forced the victim to her knees, placed the gun to her head and, despite her pleas, shot her in cold blood, in a manner resembling an execution. (Mem. Op. Denying Def.'s Mot. for Post-Conviction Mental Exam ("J. Williams Op.") (Dkt. No. 19) at 2; PSR ¶¶ 10-11.) After shooting Ms. Stewart, Defendant placed the firearm in his pocket and attempted to leave the store, but several store employees apprehended him and held him until the police arrived and took him into custody. (PSR ¶ 12.)

On January 14, 1992, Defendant pled guilty in the Colonial Heights Circuit Court to first-degree murder and Use of a Firearm in the Commission of a Felony for the killing of Ms. Stewart. (PSR ¶ 55.) On April 14, 1992, the Colonial Heights Circuit Court sentenced him to

3

life in prison plus two years. (Supp. Am. to PSR.)

The law prohibited Defendant from possessing the firearm that he used to murder Ms. Stewart, because of a previous felony conviction. The prior conviction stemmed from Defendant's first murder of a girlfriend. Exactly seventeen years before Defendant murdered Ms. Stewart, he killed another woman with whom he had had a relationship. On August 30, 1974, Defendant murdered his then-girlfriend, Geralene Taylor, by strangling her in the apartment that they shared. (PSR ¶ 34.) On December 9, 1974, Defendant pled guilty to second-degree murder. (PSR ¶ 34.) On January 17, 1975, the Petersburg Circuit Court sentenced him to sixteen years in prison for that murder. (PSR ¶ 34.) On May 12, 1978, the State released him to parole supervision. (PSR ¶ 34.) Despite only a "fair" adjustment to parole supervision, the Virginia Parole Board issued a Certificate of Discharge effective June 11, 1984. (PSR ¶ 34.) Seven years later, Defendant executed Ms. Stewart. And in the intervening years, he assaulted two other women. (PSR ¶¶ 41, 43.)

Because of this previous felony conviction, Defendant was charged with and pled guilty in federal court to Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g)(1), arising from the murder of Ms. Stewart. (PSR at 1.) On April 21, 1992, after the Colonial Heights Circuit Court had already sentenced Defendant to life imprisonment for the murder charge, United States District Judge Richard L. Williams sentenced Defendant to ten years in federal prison "to run consecutively with any sentence the defendant is presently serving." (Judgment, Dkt. No. 20.) Judge Williams ordered consecutive sentencing despite the Government raising no objection to Defendant's request for a concurrent sentence. (Position of United States with Respect to Sentencing Factors (Dkt. No. 16) at 2.) Clearly, Judge Williams intended that Defendant would serve the full extent of his sentence.

4

### B. Defendant's Cancer Diagnosis and Transfer to Federal Custody.

Sometime between late 2014 and early 2015, Plaintiff received a diagnosis of Recurrent Stage IV colon cancer and prostate cancer. (Def.'s Mot. at 4.) In January 2015, the State granted Defendant a compassionate release, and he entered federal custody at FMC Butner to commence his ten-year sentence, with a projected release date of October 17, 2023. (Def.'s Mot. at 5; Govt.'s Resp. at 2.) In June 2015, doctors diagnosed Defendant with an Adenocarcinoma, a malignant tumor, in his colon and prostate. (Def.'s Med. Records (Dkt. No. 25-4) at 6.) In June 2016, a PET revealed a liver mass. (Def.'s Med. Records at 112.) In March 2017, the liver mass enlarged, and the notes reflect intermittent chemotherapy and medication. (Def.'s Med. Records at 112.) Initially, Defendant refused cancer treatment at FMC Butner, but he ultimately consented to surgery and treatment. (Def.'s Med. Records at 111.) Defendant has declined any further treatment and, as of August 26, 2019, his doctor gave him three months to live. (Def.'s Med. Records at 111-12.)

On August 5, 2019, Defendant submitted a request to the BOP for a compassionate release. (Dkt. No. 25-3.) The BOP did not respond, but has indicated to the Government that it does not oppose the request. (Govt.'s Mem. at 2.) Defendant submitted a release plan that would allow him to stay with a caretaker in Philadelphia. (Dkt. No. 25-2.) The identified caretaker, Arlene Wilson, is the mother of another inmate housed at FCM Butner. (Dkt. No. 25-2 at 2.) On August 22, 2019, BOP Clinical Social Worker K. Wehr approved the release plan. (Dkt. No. 25-2.)

### C. Defendant's Motion.

On December 20, 2019, Defendant filed his Motion asking this Court to order a compassionate release. Defendant argues that his terminal illness constitutes "extraordinary and

5

compelling reasons" qualifying him for compassionate release. (Def.'s Mot. at 6.)

With respect to the § 3553(a) factors, Defendant first claims that a reduction in his sentence would further the ends of justice, because Defendant has had to endure additional pain and suffering while incarcerated as a result of his cancer. (Def.'s Mot. at 7.) He claims that forcing him to serve out his full sentence "would be inhumane and unjust." (Def.'s Mot. at 8.) Second, Defendant argues that a reduction in sentence would "have a minimal impact on deterrence because it would reflect [his] terminal illness, not the nature of his criminal conduct." (Def.'s Mot. at 8.) Third, Defendant claims that he poses a low risk of danger to the public, because of his physical condition. (Def.'s Mot. at 8-9.) Fourth, Defendant claims that his "medical care would be best served in a home/hospital environment, with the assistance of a caretaker." (Def.'s Mot. at 9.) Finally, Defendant argues that because he has already served a substantial portion of his sentence, compassionate release constitutes a "reasonable disposition of [his] case," because it would provide "a degree of dignity in death to a deserving candidate." (Def.'s Mot. at 10.) The Government does not oppose Defendant's request, but provides no basis for their position.[2] (Govt.'s Resp. at 1.)

### III. ANALYSIS

The law considers the imposition of a sentence of imprisonment as a final judgment on the matter. 18 U.S.C. § 3582(b). "The law closely guards the finality of criminal sentences against judicial 'change of heart.'" *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir.

---

[2] In its response, the Government says that Defendant has been free of any disciplinary incidents while incarcerated in federal custody but provided no information regarding his disciplinary record while incarcerated by the State. (Govt.'s Resp. at 2.) Although the Government provided no record support for this assertion, the Court will accept the proffer as proven. However, after having considered Defendant's lack of disciplinary incidents, the Court gives little weight to this fact in comparison to Defendant's violent conduct when released from custody.

6

2010). Pursuant to statutory law, a "court may not modify a term of imprisonment once it has been imposed" except in limited circumstances, including "to the extent otherwise permitted by statute." 18 U.S.C. § 3582(c)(1)(B).

The FSA provides that a Court may reduce the term of imprisonment:

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction. . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). Accordingly, the Court will first determine Defendant's eligibility for compassionate release — *i.e.*, whether Defendant has exhausted his administrative remedies and whether "extraordinary and compelling reasons" exist to warrant a reduction. If so, the Court will then exercise its discretion and consider the factors set forth in section 3553(a) to determine whether to release Defendant.

### A. Defendant Is Eligible for Compassionate Release.

As a threshold matter, the Court finds that Defendant has exhausted the BOP compassionate release process before filing a motion with the district court directly. Defendants may bring a motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). On August 5, 2019, Defendant submitted his request to the BOP staff. (Dkt. No. 25-3.) More than thirty days have passed, and the BOP has not yet acted on Defendant's request. (Govt.'s Resp. at 2.) Accordingly, Defendant may properly bring this motion.

Additionally, extraordinary and compelling reasons exist. Congress did not define what constitutes "extraordinary and compelling" other than that "rehabilitation of the defendant alone" will not suffice. 28 U.S.C. § 994; 18 U.S.C. § 3582(c)(1)(A). Instead, Congress charged the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 29 U.S.C. § 994(t). Before the passage of the FSA, the relevant Sentencing Commission policy statement provides that the Court may reduce the term of imprisonment if it determines that:

> i. Extraordinary and compelling reasons warrant the reduction . . .;
>
> ii. The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> iii. The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The Application Notes describe that "extraordinary and compelling reasons exist" when the "defendant is suffering from a terminal illness." U.S.S.G § 1B1.13 Application Note 1(A).

The Sentencing Commission has not updated this policy statement since the passage of the FSA.[3] The outdated policy statement still applies "[u]pon motion of the Director of the [BOP]" and assumes compassionate release "may be granted only upon motion by the Director of the [BOP]," despite the FSA now allowing defendants to also bring such a motion. U.S.S.G.

---

[3] As other district courts have noted, any amendment to the Guidelines in the near future seems unlikely, as the Commission cannot amend the Guidelines until it has four voting commissioners. *United States v. Brown*, 411 F. Supp. 3d 446, 449 n.1 (S.D. Iowa Oct. 8, 2019). The Commission currently has two voting commissioners. *About the Commissioners*, U.S. Sentencing Comm'n, https://www.ussc.gov/commissioners (last visited Feb. 5, 2020); *United States v. Shmuckler*, 2019 WL 6257959, at *9 n.8 (E.D.Va. Nov. 22, 2019) ("The Sentencing Commission presently has only two voting members and cannot amend its guidelines until it has at least four.").

§ 1B1.13 cmt. n.4. Courts have split on whether this policy statement remains instructive. *See Brown*, 411 F. Supp. 3d at 447 (describing the different positions regarding the outdated policy statement). Some courts have determined that "[t]here is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act." *United States v. Beck*, 2019 WL 271605, at *5 (M.D.N.C. June 28, 2019). Others have determined that, until the Commission amends the policy statement, "the Court must follow the policy statement as it stands." *United States v. Lynn*, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019). These discussions often occur in the context of a compassionate release request on a basis that falls short of the defendant's terminal condition here.

Regardless of the effect of the outdated policy statement, the Court finds that Defendant's terminal illness constitutes an "extraordinary and compelling reason" for compassionate release under the FSA.[4] Indeed, Defendant has Stage IV colon and prostate cancer. His treatment notes from August 26, 2019, confirm that he "has been diagnosed with a terminal, incurable disease." He has already outlived the three-month life expectancy given by his doctor during that time. Accordingly, the Court finds Defendant eligible for compassionate release due to his terminal illness.

### B. The Court has Discretion Whether to Grant Compassionate Release.

Even if a defendant meets the eligibility criteria for compassionate release, the Court retains discretion over whether to grant that relief. This discretion originates from two key provisions of the statute.

First, the statute provides that the Court "*may* reduce the term of imprisonment." 18

---

[4] With respect to the dangerousness factor found in the outdated policy statement, the Court will address Defendant's potential danger in its analysis of the § 3553(a) factors.

9

U.S.C. § 3582(c)(1)(A) (emphasis added). "The word 'may,' when used in a statute, usually implies some degree of discretion . . . [but] can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." *United States v. Rodgers*, 461 U.S. 677, 706 (1983). Moreover, Congress' use of permissive language in this section contrasts with mandatory language found in other provisions relating to a district court modifying a defendant's sentence. *See, e.g.*, 18 U.S.C. § 3742(g) (mandating that "[a] district court to which a case is remanded . . . *shall* resentence a defendant") (emphasis added); 28 U.S.C. § 2255(b) (under certain circumstances, "the court *shall* vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate") (emphasis added)).

In the statute at issue, Congress explicitly chose to use the permissive *may* rather than the mandatory *shall*, and the Court will give effect to that choice, as it must. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 354 (2013) ("We must give effect to Congress' choice.") Indeed, the Fourth Circuit recently recognized the discretion afforded courts based in part on the word "may" in a separate provision of the First Step Act. *United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019) (citing First Step Act § 404(b), 132 Stat. at 5222). By using the word "may," Congress gave courts discretion when entertaining a motion to reduce a sentence under § 3582(c)(1)(A).

Second, the statute provides that a court may reduce a sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(C)(1)(A). If a court only needed to determine the existence of "extraordinary and compelling reasons" and whether defendant had exhausted his administrative remedies, courts would have no need to consider the factors in § 3553(a). This would defeat the plain meaning of

the section. The Court will not read the statute in this manner. *United States v. Menasche*, 348 U.S. 528, 539 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section.").

Other courts recognize that they have discretion when deciding a motion for compassionate release under § 3582(c)(1)(A). The Fifth Circuit recently affirmed the denial of a compassionate release motion in *United States v. Chambliss*, __ F.3d __, 2020 WL 428933 (5th Cir. Jan. 28, 2020). The district court determined that "extraordinary and compelling circumstances" existed in the form of a terminal illness, yet consideration of the § 3553(a) factors resulted in a denial of the motion. *Id.* at *3. The Fifth Circuit affirmed, finding that the district court did not abuse its discretion in relying on the § 3553(a) factors to deny the motion. *Id.* Likewise, in *United States v. Willis*, although the court found that "extraordinary and compelling reasons" warranted a sentence reduction, consideration of the § 3553(a) factors resulted in a denial of the defendant's motion for compassionate release. 382 F. Supp. 3d 1185 (D.N.M. 2019); *see also United States v. Gotti*, 2020 WL 497987, at *2 (S.D.N.Y. Jan. 15, 2020) ("The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

Accordingly, although the Court finds that "extraordinary and compelling reasons" authorize a sentence reduction, the Court will consider the sentencing factors in § 3553(a) to determine if Defendant should have another term of imprisonment shortened.

C.  **The Purposes of Sentencing Weigh Against Compassionate Release.**

Courts must impose sentences "sufficient, but not greater than necessary" to satisfy the

11

purposes of sentences. 18 U.S.C. § 3553(a). To that end, they consider:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed –

    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

    c. to protect the public from further crimes of the defendant; and

    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentences and the sentencing range established for [the applicable offense category as set forth in the guidelines];

5. any pertinent policy statement . . . by the Sentencing Commission;

6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The applicable factors weigh strongly against granting Defendant's motion.

First and foremost, "the nature and circumstances of the offense and the history and characteristics of the defendant" weigh heavily against Defendant. The offense that landed Defendant in federal custody — felon in possession of a firearm — occurred in the context of a cold-blooded murder of his paramour, Juanita Stewart. Defendant took a firearm that the law prohibited him from possessing as a result of a previous murder that he committed, went to the store where Ms. Stewart worked, forced her to her knees and shot her in the head as she begged for her life. An examination of the history and characteristics of Defendant reveals additional

violence, including deadly violence. Before murdering Ms. Stewart, Defendant also murdered Geralene Taylor by strangling her. He spent less than four years in prison for that murder and showed no signs of rehabilitation. Defendant's criminal history also reveals multiple assaults on other women. Clearly, Defendant carries a propensity for violence.

Defendant has presented no post-sentencing mitigation evidence that would rebut the significant amount of evidence that demonstrates his violent nature. Moreover, during the original sentencing phase, Defendant argued for a mental health exam, claiming that he "has exhibited what may be a pattern of conduct resulting from a psychological defect, to wit, violent aggression toward females with which he has formed emotional ties." (J. Williams Op. at 4. (citing Def.'s Motion).) Again, Defendant has presented no evidence of rehabilitation to suggest that this admitted pattern of violent aggression towards females with whom he has formed emotional ties will not repeat itself. Yet, he asks the Court to release him into the care of a female healthcare worker, Ms. Arlene Wilson. The Court will not put Ms. Wilson, or any other member of the public, in such danger.

Second, reducing Defendant's sentence would not reflect the seriousness of the offense or provide just punishment. Even taken in a vacuum, the felon-in-possession charge represents a serious offense. The Fourth Circuit has explained the clear public safety interest in preventing felons, even non-violent felons, from possessing firearms. *United States v. Pruess*, 703 F.3d 242, 247-48 (4th Cir. 2012). Likewise, the Fourth Circuit has "repeatedly upheld statutory maximum sentences for" felon-in-possession defendants. *United States v. Messer*, 2019 WL 6048829, at *2 (4th Cir. Nov. 15, 2019) (collecting cases). Combining the circumstances of his possession of the firearm — the commission of a murder — and the underlying felony that resulted in the prohibition of Defendant's possession of a firearm — the commission of a

13

different murder — the Court finds Defendant's offense gravely serious, weighing against reducing his sentence. Indeed, the original sentencing judge, Judge Williams, imposed Defendant's ten-year federal sentence to run consecutively to his state court sentence, despite the Government not objecting to Defendant's request to have the sentence run concurrently. This sentence reflects Judge Williams' view of the seriousness of the offense and that he considered that justice required that Defendant serve his entire federal sentence, even if the State released him. And the undersigned agrees with Judge Williams. Defendant has presented no evidence of rehabilitation since committing the offense or any other mitigating evidence that could change the assessment made by Judge Williams at the time of sentencing.

Likewise, reducing the sentence would not promote respect for the law. The State previously released Defendant less than four years into a sentence for a murder conviction. After release, he assaulted multiple women before killing another one. The State released him before he completed his sentence of life imprisonment. Defendant plainly has no respect for the law and releasing him halfway through his federal sentence will not promote respect for the law. Relatedly, the Court believes that releasing Defendant again (as the State has done twice following murder convictions) will undermine deterrence to criminal conduct. Defendant argues that a reduction "would have a minimal impact on deterrence because it would reflect Mr. Webster's terminal illness, not the nature of his criminal conduct." (Def.'s Mot. at 8.) The Court disagrees. Defendant's sentence is inextricably tied to the nature of his criminal conduct, pursuant to § 3553(a), and any reduction in his sentence reflects on the Court's view of his criminal conduct. *See* 18 U.S.C. 3582(c)(1)(A) (requiring courts to consider § 3553(a) factors in deciding a motion for compassionate release).

The Court further finds that a sentence reduction would not serve the needs of "protecting

the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Defendant has presented no evidence of rehabilitation suggesting a reduction in his violent tendencies. Instead, he claims that his health conditions diminish the danger that he poses to the public. (Def.'s Mot. at 8-9.) Yet, the evidence submitted by Defendant does not paint the picture of a man incapable of harming anyone else. On August 26, 2019, the same day that Defendant's doctor gave him three months to live, Physician's Assistant Tiffany Williams completed an Instrumental Activities of Daily Living form. (Def.'s Med. Records at 113.) According to the form, Defendant could use the telephone and computer, shop and prepare food independently, maintain his cell independently, complete his laundry, travel independently on public transportation or drive his own car, and manage his accounts and medication independently. An examination on November 19, 2019 revealed that the "patient is ambulatory." (Def.'s Records at 2.) Given Defendant's history of severe violence and the evidence of his present capabilities, Defendant's continued incarceration protects the public from further crimes that he may commit.

Defendant further claims that his "medical care would be best served in a home/hospital environment." (Def.'s Mot. at 9.) Yet, Defendant has refused any further medical treatment. (Dkt. No. 25-1.) Accordingly, the Court finds this factor diminished. Moreover, should Defendant wish to resume treatment, he has presented no evidence that the treatment that he has or will receive at FMC Butner would be in any way inadequate. *See, e.g., United States v. Beck*, __ F. Supp. 3d __, 2019 WL 2716505 (M.D.N.C. June 28, 2019) (granting motion for compassionate release in part because of "abysmal health care" provided by BOP).

Finally, the Court finds that reducing Defendant's sentence would not serve "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Allowing a Defendant to serve only

15

five years of his sentence likely would create sentence disparities with other defendants convicted of a § 922(g) offense who also have two convictions for murder on their records.

The applicable § 3553(a) factors, taken as a whole, strongly favor continued incarceration. Similar cases from other courts, considering defendants with less serious criminal histories, support this finding. In *Chambliss*, the district court denied compassionate release to a terminally ill defendant serving a sentence for trafficking in methamphetamine. 2020 WL 428933, at *1. Defendant's criminal history included aggravated robbery. *Id.* at *3. The district court determined that the § 3553(a) factors did not warrant compassionate release, and the Fifth Circuit affirmed. *Id.* Likewise, in *Willis*, the defendant sought compassionate release from a sentence imposed for two counts of wire fraud. 382 F. Supp. 3d at 1186. Despite finding "extraordinary and compelling reasons" for compassionate release based on the defendant's medical condition, the court found that the § 3553(a) factors did not warrant granting the white-collar criminal a compassionate release. *Id.* at 1188-89. Neither of these defendants committed crimes nearly as atrocious as Defendant's, nor did they have criminal histories that matched the severity of Defendant's. Yet, the courts still denied them compassionate release.

Defendant, his offense and his criminal history more closely compare to the defendant in *United States v. Gotti*, 2020 WL 497987 (S.D.N.Y. Jan. 15, 2020). In *Gotti*, the court considered a request for compassionate release by the defendant Peter Gotti, the one-time acting boss of the Gambino Crime Family in New York. 2020 WL 497987, at *2. Although the court determined that the defendant's medical condition did not qualify him for compassionate release, it stated that it would have denied his request based on § 3553(a) factors even if he did qualify. *Id.* at *6. The court explained that the defendant had "headed one of the most vicious and violent organized crime organizations in New York," which extorted the construction industry for

millions of dollars. *Id.* Further, the defendant had "personally ordered the death of a Government cooperator." *Id.* As a result, the court found that reducing the defendant's sentence "would undermine the goals of sentencing" and put the public in danger, rejecting the defendant's argument that he was too old and sickly to constitute a danger to the public. *Id.* Similarly here, given the violent nature of Defendant's offense and his criminal history, reducing Defendant's sentence would undermine the goals of sentencing and potentially put the public in danger.

Although the Court sympathizes with his current medical condition, Defendant committed multiple cold-blooded murders and the Court remains unconvinced that he will not recidivate. Defendant claims that forcing him to serve his entire term "would be inhumane and unjust." (Def.'s Mot. at 8.) The Court disagrees; instead, allowing this twice-convicted murderer to walk free before he has completed his sentence would be unjust to his victims and the public at large. This Court simply will have no role in putting Defendant in a position to kill again, despite his medical situation.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Reduce Sentence Pursuant to the First Step Act (ECF No. 25) will be hereby DENIED.

An appropriate order will issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: February 10, 2020